UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| LINDSAY GARCIA | CIVIL ACTION |
|---|---|
| VERSUS | NO. 17-8126 |
| ALGIERS CHARTER SCHOOLS ASSOCIATION, INC. ET AL. | SECTION "R" (3) |

## **ORDER AND REASONS**

Defendants move to dismiss several of plaintiff's claims.[1] For the following reasons, the motions are granted in part and denied in part.

## I. BACKGROUND

Plaintiff Lindsay Garcia is a teacher at the William J. Fisher School in Algiers, Louisiana.[2] Plaintiff alleges that Stanley Green, the school's principal at the time, began sexually harassing her in August 2016.[3] Green allegedly made unwanted sexual overtures and comments in person, in notes he left on plaintiff's desk, in text messages, and during telephone calls.[4] Plaintiff asserts that she complained to her immediate supervisor and to the

---

[1] R. Docs. 7, 10.
[2] R. Doc. 1 at 2-3 ¶ 3.
[3] *Id.* at 3 ¶ 5.
[4] *Id.*

human resources department of Algiers Charter Schools Association (ACSA), but that no action was taken.[5] Green left the William J. Fisher School in early 2017.[6]

Plaintiff sued ACSA, the William J. Fisher School, and Green on August 22, 2017.[7] She seeks damages under Title VII, and also asserts claims for negligence, intentional infliction of emotional distress (IIED), and assault and battery. ACSA now moves to dismiss plaintiff's assault and battery, IIED, and negligence claims, and Green moves to dismiss the assault and battery and IIED claims.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff

---

[5] *Id.* at 4 ¶¶ 7-8. ACSA operates the William J. Fisher School and is plaintiff's employer. *Id.* at 2-3 ¶¶ 2-3. According to plaintiff, ACSA investigated Green's behavior after a third party brought it to the attention of ACSA human resources personnel and plaintiff confirmed the allegations. *See* R. Doc. 1-4 at 5-6.
[6] R. Doc. 7-1 at 2.
[7] R. Doc. 1. Attached to the complaint is a detailed affidavit by plaintiff describing her interactions with Green and her conversations with human resources personnel. R. Doc. 1-4.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007), the claim must be dismissed.

## III. DISCUSSION

### A. Assault and Battery

Under Louisiana law, "[a]ssault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. § 14:36; *see also Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1135 (5th Cir. 2014) (defining assault as "the imminent threat of a battery" (citation omitted)). A battery, in turn, is defined as "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987); *see also* La. R.S. § 14:33 (defining battery as "the intentional use of force or violence upon the person of another").

Plaintiff fails to state a claim of either assault or battery. She does not allege any actual physical contact between her and Green. Plaintiff does allege that on September 12, 2016, Green told her—while she was walking a group of students to the restroom—that he wanted to "kidnap" or "snatch" someone, "subdue" them, and "keep them for a period of time."[8] He also allegedly stated that he was "planning it out," but did not want to hurt or bruise the person.[9] According to plaintiff, she nervously laughed and told

---

[8] R. Doc. 1-4 at 4.
[9] *Id.*

4

him that "he can't do that to kids," and Green responded that it was not a kid he wanted to kidnap and subdue.[10] Later that day, Green asked plaintiff if she would like to be kidnapped or subdued.[11] This incident allegedly occurred in a school hallway, with groups of children nearby.[12]

Generally, "[m]ere words do not constitute an assault." *Groff v. Sw. Beverage Co.*, 997 So. 2d 782, 787 (La. App. 3 Cir. 2008). But "a combination of threats, present ability to carry out the threats, and reasonable apprehension of harmful or offensive contact may suffice." *Id.*; *see also McVay v. Delchamps, Inc.*, 707 So. 2d 90, 93 (La. App. 5 Cir. 1998) ("To constitute an assault, threats, coupled with the present ability to carry out the threats, are sufficient when one is placed in reasonable apprehension of receiving an injury."). The threat of harmful or offensive contact, however, must be imminent. *Rice*, 770 F.3d at 1135; *see also Groff*, 997 So. 2d at 787 (affirming summary judgment on assault claim partially because co-employee "had no weapon" and "did not move toward [plaintiff] in a manner that would indicate a threat of imminent harmful or offensive contact").

Even if Green's statements constituted a threat to kidnap or subdue plaintiff, plaintiff pleads no facts upon which the Court may infer that Green

---

10 *Id.*
11 *Id.*
12 *Id.*

5

was able to kidnap her when he made those statements, or that the threatened kidnapping was imminent. That Green made the statements in public, with groups of children nearby, suggests otherwise. Therefore, plaintiff fails to state a claim of assault or battery against Green.

Plaintiff's assault and battery claims against ACSA are predicated on its vicarious liability for Green's conduct. Because plaintiff fails to state a claim for either assault or battery against Green, her claims against ACSA must also fail. Moreover, plaintiff pleads no facts suggesting that any threatened kidnapping would be "within the ambit of [Green's] assigned duties and also in furtherance of [ACSA's] objective." *Baumeister v. Plunkett*, 673 So. 2d 994, 996 (La. 1996) (quoting *Scott v. Commercial Union Ins. Co.*, 415 So.2d 327, 329 (La. App. 2 Cir. 1982)). Thus, even if plaintiff stated a claim for assault against Green, her factual allegations would not support an assault claim against ACSA based on vicarious liability.

B.     **Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant intended to inflict severe emotional distress, or knew that such distress would be certain or substantially certain to result from his

6

conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La.1991). To satisfy the first element, the defendant's conduct must "go beyond all possible bounds of decency, and . . . be regarded as atrocious and utterly intolerable in a civilized community." *Id.* Such conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.*

"[I]n a workplace setting," Louisiana courts have "limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time." *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1026 (La. 2000). At the same time, "[a] plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger." *White*, 585 So. 2d at 1210.

### 1. *Plaintiff's IIED claim against Green*

Plaintiff pleads sufficient facts to support an IIED claim against Green. Plaintiff argues that Green's repeated harassment constituted extreme and outrageous conduct. Plaintiff points to several examples of Green's alleged harassment, including his allusions to kidnapping and subduing her,

7

discussed earlier. She also points to a meeting on November 29, 2016, when Green stared at plaintiff's vagina and asked, "Why you keep making me beg for it? Why don't you just give me that pussy?"[13] In addition, whenever Green saw plaintiff in the hallway, he allegedly bit his lip, grinned, and shook his head while following and staring at her, and constantly badgered her with the phrase, "why you keep making me beg for it."[14] Further, she attests that Green repeatedly called her out of class to make sexual comments and overtures.[15] According to plaintiff, Green's harassment made her feel uncomfortable, anxious, and frightened, caused her to cry on several occasions and vomit once, and led her to seek counseling.[16] Plaintiff argues that because Green was a principal and received sexual harassment training, Green should have known that plaintiff's severe emotional distress would be substantially certain to result from his harassment.[17]

First, Green's alleged conduct rises to the level of extreme and outrageous. The Louisiana Supreme Court has recognized that "a pattern of on-going, repeated harassment" in the workplace may constitute outrageous conduct. *Bustamento v. Tucker*, 607 So. 2d 532, 538 (La. 1992). While mere

---

[13] R. Doc. 1-4 at 5.
[14] *Id.* at 3.
[15] *Id.*
[16] *Id.* at 3, 5, 6, 8
[17] R. Doc. 12-1 at 5.

"demonstrations of affection" cannot support liability under Louisiana law, *Noto v. Regions Bank*, 84 F. App'x 399, 403 (5th Cir. 2003) (per curiam), frequent comments and gestures of a sexual nature may, *see, e.g.*, *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 n.14 (5th Cir. 1994) (applying Texas law). Plaintiff alleges a pattern of ongoing, repeated harassment in the form of frequent sexual comments and gestures. Moreover, plaintiff alleges that Green implicitly threatened to kidnap and subdue her. This alleged conduct is sufficiently extreme and outrageous to satisfy the first element of an IIED claim.

Second, plaintiff has alleged that she experienced severe emotional distress. In *Smith v. Amedisys Inc.*, 298 F.3d 434 (5th Cir. 2002), the Fifth Circuit noted that "there is no bright-line test for determining whether [a plaintiff's] emotional distress meets the level of severity necessary" to establish the second element of an intentional infliction of emotional distress claim. *Id.* at 450. But "the threshold is high." *Id.* According to the Louisiana Supreme Court, "[t]he distress suffered must be such that no reasonable person could be expected to endure it. Liability arises only where the mental suffering or anguish is extreme." *White*, 585 So. 2d at 1210. In *Bustamento*, for example, the Louisiana Supreme Court found the second element of an IIED claim satisfied because the plaintiff's "psychiatrist diagnosed her as

being on the verge of a nervous breakdown" from the defendant's harassment. 607 So. 2d at 535. But in *Smith*, the Fifth Circuit found that the plaintiff's depression, for which she did not seek medical treatment, and feelings of anger, disgust, and embarrassment were insufficient to satisfy this element. 298 F.3d at 450.

Here, the facts alleged in plaintiff's affidavit permit the plausible inference that her mental suffering or anguish was extreme. Green's behavior allegedly caused her to feel uncomfortable, anxious, and scared over the course of several months, impairing her performance at work.[18] Plaintiff broke down in tears while recounting Green's behavior to human resources personnel on November 30, 2016, and cried and vomited after a December 5, 2016 meeting about Green's behavior.[19] These reactions clearly constitute emotional distress. *See* Restatement (Second) of Torts § 46 cmt. j (Am. Law Inst. 1965) ("Emotional distress . . . includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea."). Moreover, unlike in *Smith*, this emotional distress led plaintiff to seek

---

18    R. Doc. 1-4 at 10.
19    *Id.* at 5, 8.

psychiatric help.[20] These facts raise the reasonable expectation that discovery will reveal sufficient evidence of severe emotional distress.

Third, the facts alleged in plaintiff's affidavit permit the plausible inference that Green intended to inflict severe emotional distress, or knew that such distress would be certain or substantially certain to result from his conduct. Direct evidence of such intent is not necessary to establish liability. *See Taylor v. State*, 617 So. 2d 1198, 1204-05 (La. App. 3 Cir. 1993); *see also Boutte v. United Parcel Serv., Inc.*, No. 17-787, 2017 WL 3917144, at *8 (E.D. La. Sept. 7, 2017) (inferring intent to cause severe emotional distress from defendant's conduct). Here, Green's alleged pattern of sexual advances—including his implicit threat to kidnap and subdue plaintiff—continued long after plaintiff told Green that she did not want a relationship with him. Moreover, Green was plaintiff's boss and should have known that a sexual relationship with plaintiff would have been inappropriate. That Green received sexual harassment training further suggests his awareness of the severe emotional distress caused by a pattern unwanted sexual advances. These facts give rise to the plausible inference that Green knew his allegedly harassing conduct would be substantially certain to result in plaintiff's severe emotional distress.

---

[20]    *Id.* at 3, 6, 8

11

## 2. Plaintiff's IIED claim against ACSA

Plaintiff fails to state an IIED claim against ACSA. At most, plaintiff's allegations support the inference that ACSA investigated Green's conduct, but that this investigation was inadequate. Plaintiff argues that because of the investigation's inadequacy, plaintiff continued to suffer from Green's harassment until Green's separation from the school in early 2017.[21]

"An employer's continued inaction" after receiving an employee's complaints of harassment "may give rise to a claim for intentional infliction of emotional distress." *Martin v. Bigner*, 665 So. 2d 709, 712 (La. App. 2 Cir. 1995). But plaintiff points to no authority suggesting that a merely *inadequate* investigation rises to the level of outrageous and extreme conduct. To the contrary, the Fifth Circuit rejected a similar argument in *McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007) (per curiam). There, the plaintiff had internally complained of harassment by a co-employee. The employer reviewed the complaint and determined that it was not substantiated. *Id.* at 555. Although the plaintiff experienced emotional distress after learning the outcome of the employer's investigation, the Fifth Circuit held that the employer's conduct was not outrageous or extreme. *Id.* at 563. Here, ACSA allegedly conducted an investigation but determined

---

[21] R. Doc. 13-1 at 3.

that plaintiff's complaint could not be corroborated.[22] As in *McCoy*, this conduct cannot support a claim of intentional infliction of emotional distress. Plaintiff's IIED claim against ACSA must be dismissed.

### C. Negligence

Plaintiff's negligence claim is based on ACSA's failure to terminate Green, which allegedly "plac[ed] her in danger of a sexual predator" at her workplace.[23] This claim is barred by the Louisiana Workers' Compensation Act (LWCA). The LWCA provides the exclusive remedy for personal injuries caused by an employer's or coworker's negligence when those injuries arise out of and in the course of employment. La. R.S. §§ 23:1031, 1032; *see also Duncan v. Wal-Mart La., L.L.C.*, 863 F.3d 406, 408 n.1 (5th Cir. 2017); *Hilliard v. Jefferson Par.*, 991 F. Supp. 2d 769, 778 (E.D. La. 2014) (LWCA bars negligent retention claims against employers). This exclusive remedy extends to damages for emotional distress. *See Tumbs v. Wemco, Inc.*, 714 So. 2d 761, 764-65 (La. App. 4 Cir. 1998). Because plaintiff's alleged injuries arise out of and in the course of her employment, plaintiff fails to state a claim for negligence against ACSA.

---

[22] R. Doc. 1-4 at 9.
[23] R. Doc. 1 at 4 ¶ 10.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS ACSA's motion to dismiss, and GRANTS IN PART and DENIES IN PART Green's motion to dismiss. Plaintiff's claims for assault and battery against both ACSA and Green, intentional infliction of emotional distress against ACSA, and negligence against ACSA are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __9th__ day of March, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE