LINDSAY ARMOND GARCIA                                    CIVIL ACTION

VERSUS                                                              NO. 17-8126

ALGIERS CHARTER SCHOOLS                         SECTION "R" (3)
ASSOCIATION, INC., WILLIAM J.
FISHER SCHOOL, AND STANLEY
GREEN, PERSONALLY AND IN HIS
CAPACITY AS WILLIAM J. FISHER
SCHOOL

## ORDER AND REASONS

Before the Court are defendant Stanley Green's motion for partial summary judgment on the issue of intentional infliction of emotional distress[1] and defendant Algiers Charter Schools Association's (ACSA) motion for summary judgment on the issue of Title VII damages.[2] The Court denies Green's motion because a reasonable jury could find that Green's actions were extreme and outrageous, that Garcia suffered severe emotional distress, and that Green acted intentionally. It grants ACSA's motion because it has shown as a matter of law that the *Ellerth/Faragher* defense applies and that it satisfies both required parts of the defense.

---

[1]       R. Doc. 27.
[2]       R. Doc. 29.

## I. BACKGROUND

This case arises out of defendant Green's alleged sexual harassment of plaintiff Lindsay Armond Garcia. During the 2016 school year, Garcia was a fifth and sixth grade social studies teacher at William J. Fisher School in Algiers, Louisiana.[3] Beginning in August of 2016, Garcia and Green, the school's principal, had a series of interactions that included text messages, phone calls, in person conversations, and notes left on Garcia's desk.[4] Garcia also made a recording of Green that includes the phrases "snatch someone" and "keep them for a period of time."[5] ACSA has a sexual harassment policy of which Garcia was generally aware.[6] Rather than filing a formal complaint under the policy, Garcia discussed Green's behavior with another employee at the school.[7] This third party then reported the allegations to members of ACSA's administration.[8] ACSA asked Garcia to meet with its Executive Director of Human Resources and its Chief of Staff on November 30, 2016.[9] At the meeting, Garcia made numerous allegations against Green, showed

---

[3]    R. Doc. 29-2 at 3 ¶ 11; R. Doc. 48-8 at 1 ¶ 1.
[4]    R. Doc. 27-6 at 2 ¶ 5, 5 ¶23; R. Doc. 48-8 at 2 ¶¶ 7-8, ¶¶ 10-15.
[5]    R. Doc. 27-6 at 4 ¶ 21; R. Doc. 48-8 at 3 ¶ 16.
[6]    R. Doc. 29-2 at 1-2 ¶ 1, ¶ 9; R. Doc. 29-4 at 28.
[7]    R. Doc. 29-2 at 3 ¶¶ 14-15; R. Doc. 29-4 at 89-90.
[8]    *Id.*
[9]    R. Doc. 29-2 at 4 ¶16; R. Doc. 29-4 at 89.

texts with Green, and played the recording of Green discussing "snatching someone."[10]

In response to the meeting with Garcia, Green was placed on administrative leave with pay beginning on December 2, 2016.[11] Between the meeting on November 30 and Green's leave on December 2, Green went into Garcia's classroom twice to ask to remove a student from class, which Garcia interpreted as an attempt to intimidate her.[12] ACSA also hired Laura Tafaro to provide an independent third party investigation of Garcia's allegations.[13] Although Tafaro was hired as an independent third party, she identified herself to Garcia as ACSA's attorney.[14] Garcia declined to participate in Tafaro's investigation.[15] Without any information from Garcia directly, Tafaro concluded that Green did not violate ACSA's sexual harassment policy.[16] Green was allowed to return to work on January 3, 2017 after attending one-on-one sexual harassment training.[17] Garcia submitted additional information to Tafaro on January 12, and Tafaro re-opened the

---

[10] R. Doc. 29-2 at 4 ¶16; R. Doc. 29-4 at 95.
[11] R. Doc. 29-2 at 4 ¶ 18; R. Doc. 29-11.
[12] R. Doc. 29-2 at 5 n. 42; R. Doc. 29-4 at 79-80.
[13] R. Doc. 29-2 at 4 ¶ 17; R. Doc. 48-8 at 1 ¶ 3.
[14] R. Doc. 29-4 at 109-111.
[15] R. Doc. 29-2 at 5 ¶ 20; R. Doc. 29-4 at 112.
[16] R. Doc. 29-2 at 5 ¶ 21.
[17] R. Doc. 29-2 at 5 ¶ 22; R. Doc. 29-4 at 123.

investigation.[18]  She determined that, in light of the new evidence, Green had violated the sexual harassment policy.[19]  As a result, Green was placed back on administrative leave on January 13, 2017 and then fired from his position as principal at William J. Fisher School on February 13.[20]  Garcia began visiting a counselor in January of 2017 for depression and anxiety.[21]

On August 22, 2017, Garcia filed this suit in federal court, claiming negligence, intentional infliction of emotional distress, and assault and battery against Green and ACSA and seeking damages under Title VII.[22]  The Court granted ASCA's motion to dismiss all claims against it except for the Title VII damages.[23]  The Court also granted Green's motion to dismiss the assault and battery claim against him.[24]  Defendant Green now moves for partial summary judgment on the ground that Garcia cannot prove her claim of intentional infliction of emotional distress against him.[25]  Defendant ACSA moves for summary judgment on the ground that that ACSA is not liable to

---

[18]     R. Doc. 48-8 at 4 ¶ 19; R. Doc. 29-2 at 6 ¶¶ 23-25; R. Doc. 29-13.
[19]     *Id.*
[20]     R. Doc. 48-8 at 4 ¶ 20; R. Doc. 29-2 at 6 ¶ 26.
[21]     R. Doc. 27-6 at 5 ¶ 24; R. Doc. 48-8 at 4 ¶ 21.
[22]     R. Doc. 1.
[23]     R. Doc. 21.
[24]     *Id.*
[25]     R. Doc. 27.

Garcia under Title VII of the Civil Rights Act of 1964.[26] Garcia opposes both motions.[27]

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. A dispute about a material fact is genuine "if the evidence is such that

---

[26] R. Doc. 29.
[27] R. Doc. 48; R. Doc. 49.

a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322).

## III.  DISCUSSION

### A.  Green Has Failed to Show that Garcia's Intentional Infliction of Emotional Distress Claim is Meritless

Green argues that Garcia cannot prove intentional infliction of emotional distress against him as a matter of law because the text messages that Green and Garcia exchanged were friendly and casual rather than extreme or outrageous,[28] and Green's behavior does not meet the high bar required to show intentional infliction of emotional distress.[29]  Green argues that, accepting all of the facts contained in Garcia's initial, January 12, 2017 affidavit, her claims fail as a matter of law.[30]  While Green's statement of material facts does not contain a complete account of Garcia's allegations against him, he does not dispute for the purposes of this motion any of Garcia's allegations contained in her statement of material facts to the extent

---

[28]  R. Doc. 27-1 at 7.
[29]  *Id.* at 14.
[30]  *Id.* at 1; R. Doc. 41 at 3.

that they are consistent with the affidavit.[31]  The Court therefore accepts the facts stated in Garcia's January 12, 2017 affidavit as undisputed.[32]  *See* Fed. R. Civ. P. 56(c)(3) (Courts "may consider other materials in the record" when ruling on summary judgment motions); *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996) (holding that courts may consider materials in the record not cited by the parties).

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant intended to inflict severe emotional distress or knew that such distress would be certain or substantially certain to result from his conduct.  *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).  To satisfy the first element, the defendant's conduct must "go beyond all possible bounds of decency, and . . . be regarded as atrocious and utterly intolerable in a civilized community."  *Id.*  Such conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other

---

[31]     *See* R. Doc. 63.

[32]     Green argues that the Court should not accept as fact Garcia's allegations contained in other, later submitted exhibits.  R. Doc. 41 at 1-5. Because the Court grants the motion for Garcia without considering her additional allegations, there is no need to address Green's concerns about the additional documents.

trivialities.  Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.*

"[I]n a workplace setting," Louisiana courts have "limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time." *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1026 (La. 2000).  Indeed, conduct that would not be outrageous when viewed "as an isolated incident" can "become such when repeated over a period of time." *Bustamento v. Tucker*, 607 So.2d 532, 538 (La. 1992).  In addition, "[a] plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger."  *White*, 585 So. 2d at 1210.

Under this standard, Green has not shown that Garcia's claim fails as a matter of law.  Garcia has testified that Green repeatedly harassed her—at work, in phone conversations, and by text—for three and a half months.[33]  In addition to repeated text messages and calls, Garcia testified that Green made comments to her in person about falling in love with her body.[34]  He talked about "all of the things [he] would do to [her]."[35]  She explained to him

---

[33]    *See generally* R. Doc. 48-2.
[34]    *Id.* at 2.
[35]    *Id.*

that she was uncomfortable, but he continued to pursue her.[36]  He required

her to step out in the hallway while she was teaching to tell her how sexy she

was.[37]  He stared at her body and asked her why she made him "beg for it."[38]

On another occasion, he stared at her body and said:

> "I just can't help myself. Why you keep making me beg for it? Why
> don't you just give me that pussy?"[39]

Garcia also recorded Green explaining his plan to "snatch someone," "keep

them for a period of time," "not hurt them or mark them or bruise them," but

"kidnap" and "subdue" them.[40]  Green made these comments in front of

Garcia's students.[41]  He also told Garcia that she would have to give him

something "in return" if he approved her request for time off.[42]

Green made threatening remarks to Garcia to demonstrate his power

over her.  He told her not to go to her direct supervisor with questions or

concerns and instead to report only to him because she was a "special case."[43]

He told her that he ran the school and could do "whatever he want[ed]."[44]

---

[36]    *Id.*
[37]    *Id.* at 3.
[38]    *Id.*
[39]    *Id.* at 5.
[40]    *Id.* at 4.
[41]    *Id.*
[42]    *Id.*
[43]    *Id.* at 3.
[44]    *Id.*

He followed her around and chastised her when she didn't respond to his calls or texts and when she tried to avoid him at school.[45]  He made sure that he personally conducted her performance evaluation, and he gave her low scores so that he could raise her scores later and make himself "look good" for "coaching" her.[46]  When Garcia resisted signing the performance evaluation because Green had not actually evaluated her teaching before giving her these scores, he told her to shut up and sign the paper.[47]  Shortly thereafter, the supervisor assigned to conduct the same evaluation told her that it would occur two weeks later on December 1, 2016.[48]  Garcia went Green's office to ask why other staff members had no knowledge of the evaluation he conducted, and Green stared at her body and said to her, "I'm sorry, what were you saying? I just can't help myself. Why you keep making me beg for it? Why don't you just give me that pussy?"[49]

Green is not entitled to summary judgment because a jury could reasonably find that Green's conduct is extreme and outrageous.  Garcia testifies to an ongoing litany of highly inappropriate comments that establish a pattern of repeated, deliberate harassment.  While there is "no litmus test

---

[45]     *Id.* at 2-3.
[46]     *Id.* at 4.
[47]     *Id.* at 4-5.
[48]     *Id.* at 5.
[49]     *Id.*

for outrageousness," Green's comments go beyond what any civilized community would tolerate. *Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 613 (5th Cir. 1999). This is especially true because Green made sexual and threatening comments in front of Garcia's students, who are children. Garcia is also entitled to greater protection because Green had substantial power over her, including personally approving her time off and conducting her performance reviews.[50] *See White*, 585 So. 2d at 1210. The incidents that Green alleges are within the realm of behavior that previous decisions have recognized as extreme. *See Bustamento*, 607 So.2d at 543 (holding that repeated cursing, sexual comments and advances, asking about personal information, and threatening with violence qualified as outrageous even if individually the incidents would not have risen to that level).

A reasonable juror could also find that Garcia suffered severe emotional distress as a result of Green's actions. *White*, 585 So. 2d at 1209. Garcia visited a counselor after Green's repeated harassment and was treated for anxiety and depression. Garcia also testified that she dreaded coming to work,[51] sat in her car crying and vomiting for over an hour and then had to call in sick,[52] and that Green's actions made her hate a job that she had

---

[50]     *Id.* at 4-5.
[51]     *Id.* at 3.
[52]     *Id.* at 8.

previously loved.[53]  This distress is beyond the level that a reasonable person would be expected to endure.  *Id.* at 1210.  Garcia was not merely upset.  She alleges ongoing physical symptoms as a result of Green's harassment and illness that required her to go home from school in the middle of the day.  She also entered counseling for anxiety and depression after the harassment.  These symptoms are sufficient to show severe emotional distress.  *See Skidmore*, 188 F.3d at 614 (holding that losing weight, anxiety attacks, headaches, nightmares, and post-traumatic stress disorder are sufficient evidence of severe emotional distress).

Finally, a reasonable juror could also conclude that Green intended to inflict emotional distress on Garcia.  A reasonable jury could find that Green knew that his ongoing sexual advances were substantially certain to cause Garcia emotional distress, because she told him so directly on multiple occasions.[54]  Similarly, his performance review, his instruction not to communicate with her direct supervisor, and his comment that he could do whatever he wanted, combined with his unwanted advances, were likely to

---

[53]     *Id.* at 10.
[54]     *Id.* at 1-4.  Garcia told Green that she was not interested in dating him and was uncomfortable beginning on August 16, the first time he asked her on a date.  She repeatedly told him that she was not interested and that his comments made her extremely uncomfortable, alleging at least three other instances in which she did so directly (on August 22, September 12, and the week of October 10).

cause emotional distress. They suggested that Garcia was powerless to stop his behavior and that he could inflict adverse consequences at will. A jury could find that Green should have known his conduct would cause a reasonable person emotional distress.

Green cites several cases that he argues prove Garcia's claim fails as a matter of law. The first of these is *Smith v. Amedisys*, in which the Fifth Circuit affirmed the trial court's grant of summary judgment in favor of the defendant. 298 F.3d 434 (5th Cir. 2002). Green contends that the pattern of behavior in *Smith* is more egregious than Green's behavior, so that Green's conduct cannot qualify as extreme or outrageous. This argument is meritless, because the Fifth Circuit evaluated only the second prong of the *White* test in *Smith* (whether the plaintiff suffered severe emotional distress), and it drew no conclusions as to whether the conduct alleged satisfied the first prong (whether the defendant's conduct was extreme and outrageous). *Id.* at 449. As to the second prong of the *White* test, the plaintiff in *Smith* alleged only that she felt embarrassed, angry, depressed, and suffered from headaches. *Id.* at 450. She received medical treatment only for her headaches, and her treating physician testified that he had no record of the headaches being related to stress or sexual harassment. *Id.* Garcia's symptoms and treatment in the record before the Court are more serious.

Green also cites several non-binding district court and Louisiana appellate court cases with ostensibly similar, but ultimately distinguishable, facts.[55] These cases involve behavior that is either less vulgar or intimidating than Green's conduct, or that is not sufficiently continuous and long-lasting to show a pattern of deliberate, repeated harassment over a period of time. *See Barrera v. Aulds*, No. 14-18889, 2016 WL 3001126, at *9 (E.D. La. May 25, 2016) (plaintiff alleged that co-worker asked her to meet him at his hotel, asked her to "lay down with him" at his hotel, asked her to check on him in his hotel room, and followed her to bars and restaurants); *Bradford v. Ins. Mgmt. Admr's of Louisiana, Inc.*, No. 05-1504, 2007 WL 2480358, at *1 (W.D. La. Aug. 30, 2007) (plaintiff alleged that co-worker made rude comments, said she had a "baby-looking figure," and tried to set her up on dates with customers); *McClinton v. Sam's East, Inc.*, No. 11-2156, 2012 WL 4483492, at *9 (W.D. La. Sept. 28, 2012) (plaintiff alleged inappropriate comments, hugs, and pinching on two occasions); *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So.2d 1049, 1050-52 (La. App. 3 Cir. 1992) (plaintiff alleged that supervisor yelled, cursed, called her names such as "fat," "stupid," and "dumb," and commented on the inferiority of women generally). Intentional infliction of emotional distress is a fact-specific claim,

---

[55] R. Doc. 27-1 at 17-21.

and "whether conduct [is] outrageous and extreme must be analyzed on a case-by-case basis." *Skidmore*, 188 F.3d at 613. None of the cases that Green cites speaks directly to the facts of this case.

Garcia at least raises a material issue of fact as to all three parts of her intentional infliction of emotional distress claim. Green's motion for partial summary judgment is therefore denied.

### B.     ACSA Has Shown that It Complied with Title VII

ACSA seeks summary judgment on Garcia's vicarious liability claim under Title VII of the Civil Rights Act of 1964.[56] While ACSA concedes for the purposes of summary judgment that Green's harassment was sufficiently severe and pervasive to create a hostile environment,[57] it seeks to absolve itself of liability by asserting an affirmative defense available under the Supreme Court cases, *Burlington Industries v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton.*, 524 U.S. 775 (1998).[58]

Title VII of the Civil Rights Act of 1964 provides in relevant part that "[i]t shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . .

---

[56]     R. Doc. 29.
[57]     R. Doc. 29-1 at 12.
[58]     *Id.* at 12-13.

sex." 42 U.S.C. § 2000e–2(a)(1). Title VII is violated when a plaintiff alleges sexual harassment "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotation omitted). A workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).

The Supreme Court has distinguished between cases in which a hostile work environment is created by the plaintiff's co-workers and cases in which the hostile work environment is created by the plaintiff's supervisor. *See Ellerth*, 524 U.S. at 760; *Faragher*, 524 U.S. at 803. When the plaintiff's supervisor is responsible, the employer can be held vicariously liable for the supervisor's actions without any showing that the employer was personally negligent. *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

The only affirmative defense available to employers in a supervisor sexual harassment case in which an employee alleges a hostile work environment is the one announced by the Supreme Court in *Ellerth* and *Faragher*. *See Casiano v. AT&T Corp.*, 213 F.3d 278, 288 Appendix (5th Cir.

2000).  The *Ellerth/Faragher* defense is not available when a "tangible employment action" has been taken against the employee alleging a violation a Title VII.  *See Watts v. Kroger Company*, 170 F.3d 505, 510 (5th Cir. 1999).

The *Ellerth/Faragher* affirmative defense allows an employer to avoid vicarious liability if it can prove: "(a) that [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *Faragher*, 524 U.S. at 807.  To succeed, the employer must establish both prongs of the *Ellerth/Faragher* affirmative defense; otherwise the employer is not protected from vicarious liability for the supervisor's harassment.  *See Casiano*, 213 F.3d at 284.

Garcia argues that her low performance review by Green is a tangible employment action that precludes the *Ellerth/Faragher* defense.[59]  Tangible employment actions are those that require "an official act of the enterprise, a company act," such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Ellerth*, 524 U.S. at 761-62.  Under this definition, the performance evaluation was not a tangible employment action, because

---

[59]     R. Doc. 49-1 at 9-10.

Garcia does not allege that it directly affected her pay, position, or responsibilities.[60] Garcia posits that the evaluation was likely used in later hiring decisions, but she does not provide any evidence to support this assertion.[61] A negative performance review, without evidence that it was the cause of a significant change in employment status, does not constitute a tangible employment action. *Casiano*, 213 F.3d at 285 (holding that a negative evaluation was not a tangible employment action because there was a second, untainted performance review within the same twelve months giving the employee the same grade). ACSA may therefore assert the *Ellerth/Faragher* defense if it can prove both required elements.

To satisfy the first prong of the *Ellerth/Faragher* defense, ACSA must show that it exercised reasonable care to prevent and promptly correct any sexually harassing behavior. *Faragher*, 524 U.S. at 807. A reasonable sexual harassment policy, of which the employee was aware is strong evidence of an employer's reasonable care. *Ellerth*, 524 U.S. at 765; *Pullen v. Caddo Parish School Board*, 830 F.3d 205, 210 (5th Cir. 2016) ("Where the plaintiff admits that he or she was on notice of a [sexual harassment] policy and complaint procedure and the court determines that the policy was reasonable, we have

---

[60]     *Id.*
[61]     *Id.*

consistently found the first prong satisfied.").  A policy is reasonable when it specifically mentions sexual harassment, rather than simply referring to anti-discrimination, and specifies a complaint procedure.  *Id.* (citing *E.E.O.C. v. Boh Bros. Constr. Co.*, LLC, 731 F.3d 444, 463-65 (5th Cir. 2013)). ACSA has a sexual harassment policy with a specific complaint procedure, and Garcia admits that she was aware of this policy.[62]

In addition, ACSA promptly investigated Garcia's allegations once it learned of them.  Garcia argues that ACSA failed to act promptly because Green returned to school on the day immediately after Garcia reported Green's behavior on December 1, 2016.[63]  But Green was placed on administrative leave the following day on December 2, and did not return to work until ACSA had completed its initial investigation.  The Fifth Circuit has accepted an employer's response as sufficiently swift when the employer took disciplinary action against the supervisor two months after the initial complaint.  *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 260-61, 266 (5th Cir. 1999) (calling a response "swift and appropriate" when plaintiff reported harassment in mid-September and the employer took remedial action in early November).  The passage of one day before Green was placed

---

[62]     R. Doc. 49-1 at 10; R. Doc. 29-4 at 28.
[63]     R. Doc. 49-1 at 11.

on administrative leave does not show that ACSA's response was unreasonable. While ACSA did let Green return to work in early January, he was placed back on administrative leave shortly thereafter on January 13, and then he was fired. ACSA's investigation and administrative leave are sufficient to show that its response to the complaints was reasonable even if Green was not actually fired until two months after it learned of Garcia's allegations. *See Adams v. City of Gretna*, No. 07-9720, 2009 WL 2883038, at *4 (E.D. La. Sept. 2, 2009) (collecting Fifth Circuit cases holding that some delay between reporting and response is reasonable). ACSA has met its burden under the first *Ellerth/Faragher* prong.

The second prong of the *Ellerth/Faragher* defense requires ACSA to show that Garcia unreasonably failed to take advantage of any preventative or corrective opportunities provided by ACSA to avoid harm. *Ellerth*, 524 U.S. at 765. An employee's unreasonable failure to use the complaint procedure provided by her employer is sufficient to satisfy the employer's burden. *Id.* Garcia did not file a complaint through the procedures designated in ACSA's sexual harassment policy, although she did meet with representatives of ACSA when they found out about the harassment from a third party and asked to meet with her. Garcia's failure to officially report Green's harassment for three and a half months was unreasonable despite

her complaints to third parties. *See Thompson v. Naphcare, Inc.*, 114 Fed. App'x 317, 324 (5th Cir. 2004) (holding that failure to report for two months is unreasonable); *Williams v. Barnhill's Buffet Inc.*, 290 Fed. App'x 759, 763 (5th Cir. 2008) (holding that informal complaints to co-workers are insufficient). Her decision not to take advantage of ACSA's corrective opportunities allowed Green's harassment to escalate and continue. *Faragher*, 524 U.S. at 806 (holding that sexual harassment victims have a duty "to use such means as are reasonable under the circumstances to avoid or minimize damages"); *see also Adams*, 2009 WL 2883038, at *6 (holding that plaintiff "should not have idly sat by until her work environment degenerated into a hostile one.").

Garcia argues that it was reasonable for her not to report the harassment because Green was powerful within the school and a good friend of officials at the very top of ACSA's organizational structure.[64] She also argues that reporting would not have caused the behavior to stop because Garcia repeatedly told Green that she was not interested, and he was undeterred.[65] Under Fifth Circuit law, an employee has a duty to report harassment even when her previous reports were completely ignored and

---

[64] R. Doc. 49-1 at 11-12.
[65] *Id.* at 12.

inspired additional harassment. *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 413 (5th Cir. 2002) (holding that an employee who reported harassment and was met with additional harassment by the supervisor to whom she reported it, and whose employer made no response to the allegations, was unreasonable when she did not report later harassment to a different supervisor). If it was unreasonable for the plaintiff in *Wyatt* not to report her harassment after personally suffering adverse consequences, Garcia's fear of adverse consequences is clearly not sufficient to defeat ACSA's defense. Garcia therefore acted unreasonably when she failed to report Green's harassment to anyone within ACSA's administration. ACSA has satisfied its burden as to both prongs of the *Ellerth/Faragher* defense.

## IV. CONCLUSION

For the foregoing reasons, Green's partial motion for summary judgment is DENIED and ACSA's motion for summary judgment is GRANTED.

New Orleans, Louisiana, this __11th__ day of October, 2018.

*Sarah Vance*
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE